GEORGE B. HAND, Appellant, *v.* GAS ENGINE AND POWER COMPANY and CHARLES L. SEABURY & COMPANY, CONSOLIDATED, Respondent.

1. CONTRACT — ADVERTISING — ALLOWANCE ON PURCHASE. An agreement for advertising, to be paid for by the deduction of a certain sum from the contract price of launches provided that price reaches a designated amount, imports a covenant on the part of the advertiser to deal with the other party to the advertising contract in the sale of such launches on exactly the same terms as it offers to other customers.

2. CONSTRUCTION — MEETING OF MINDS. A contract for the purchase of launches to be paid for in cash is not invalid on the ground that the minds of the parties did not meet, merely because the purchaser, whose identity and purpose were not known to the vendor, intended to pay part of the price with the outstanding obligation of the vendor on an advertising contract, since payment to a vendor in his own obligations is a payment in cash.

3. REFUSAL TO PERFORM. A recovery for the agreed price of advertising may be had in money under a contract to pay for such advertising only by an allowance on the price in case of a certain purchase, where the advertiser after an agreement for such purchase had been made at a cash price without his knowing the identity of the purchaser, on his subsequently learning the purchaser's intention to pay part in the obligation for advertising refuses to complete the sale.

*Hand* v. *Gas Engine & Power Co.,* 34 App. Div. 354, reversed.

(Argued March 29, 1901; decided May 14, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 16, 1898, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles De Hart Brower* for appellant. An offer of sale was made by defendant, accepted by plaintiff, and a contract price agreed upon. (*Dustan* v. *McAndrew,* 44 N. Y. 72.) The defense that the making of an agreement to sell at a special contract price was fraudulently induced, was not within the issues raised by the pleadings. (*Dabney* v. *Stevens,*

10 Abb. [N. S.] 39; *Clark* v. *House,* 16 N. Y. Supp. 777; *Beach* v. *Cooke,* 28 N. Y. 508; *Wright* v. *Delafield,* 25 N. Y. 266; *Romeyn* v. *Sickles,* 108 N. Y. 650; *Day* v. *Town of New Lots,* 107 N. Y. 148; *Southwick* v. *F. Nat. Bank,* 61 How. Pr. 164; Code Civ. Pro. § 500; *Wood* v. *Amory,* 105 N. Y. 278.)

*E. P. Johnson* for respondent. If there was any contract at all, it was a contract specifically providing for the payment of the full price in cash. (*Delaume* v. *Agar,* McGloin [La.], 98.)

CULLEN, J. The complaint alleged that Elwood S. Hand, the plaintiff's assignor (to be hereafter called the plaintiff), on October 31st, 1900, entered into the following contract in writing with the Gas Engine and Power Company, the defendant's predecessor (to be hereafter called the defendant):

"NEW YORK CITY, *Oct. 31st,* '90.

"Mr. E. S. HAND, Auditorium Building, Chicago, Ills.:

"DEAR SIR.— In consideration of the insertion of an advertisement to occupy three pages (the copy for which is attached hereto) in the book descriptive and illustrative of the Auditorium Building, Chicago, we promise to allow and deduct from our contract price for naphtha launches, providing said price amounts to $5,000 or more, the sum of eleven hundred and fifty-five dollars ($1,155), on or after publication and delivery to us of twenty-five books containing our advertisement. In the event of said purchase not being made good, we are to be absolutely acquitted of any charge for the advertisement herein provided. It is also agreed that we are to be furnished without extra charge with the original drawings prepared for the illustrations, as also electrotypes of same. The copy of plates and written matter to be submitted to us before going to press. The order for the launches above referred to must be given us at least three months prior to date for delivery of launches. Very respectfully,

"GAS ENGINE & POWER CO.,

"JNO. J. AMORY, *Secy. & Treas.*

"Accepted Oct. 31st, 1890.  E. S. HAND;"

it also alleged the performance of the contract by the plaintiff; that on the 6th day of December, 1897, the defendant entered into an agreement to sell to the plaintiff two naphtha launches for the sum of five thousand dollars; that thereupon the plaintiff duly tendered to defendant said contract and the sum of $3,845 in money in payment of said contract price; that the defendant refused to accept the sum or to deliver the launches. The plaintiff demanded judgment for the sum of $1,155 due on the advertising contract. The defendant answered, admitting the execution of the contract of October, 1890, and its performance by the plaintiff, but denied making the agreement of December, 1897, for the sale of the launches, and also the allegations of the complaint in respect to the plaintiff's tender of payment. It did not plead the Statute of Frauds against the agreement of 1897, nor did it allege that said agreement was obtained by fraud. On the trial the plaintiff proved the making of an oral agreement for the sale of the two launches for the sum of $5,000 in cash. The negotiations for this sale were had between the plaintiff's assignor and John J. Amory, the president of the defendant, who were the same persons who made and executed the contract of 1900, that instrument being prepared by Mr. Amory. In these negotiations Hand did not disclose that he was the person with whom Amory had made the agreement of December, 1900, or that in bargaining with him he intended to apply that contract in payment for the launches. Amory admitted making the oral agreement for the sale of two launches, but testified that it was to be for cash, and that he did not at the time identify the proposed purchaser as being the person with whom he had made the advertising contract in 1900. He further testified that in the negotiations Hand gave his name as Stokes. The evidence discloses no real controversy as to the other issues in the case, the refusal of the defendant to deliver the launches and the tender by the plaintiff of the purchase money. The trial court directed a verdict in favor of the plaintiff. The Appellate Division, by a divided court, reversed this judgment and ordered a new trial.

The ground on which the prevailing opinion below proceeds is that the minds of the parties never met as to the sale for the launches, and that there was no valid agreement (or at least that the question was one of fact for the jury), because the defendant expected to receive actual money in payment, while the plaintiff intended to set off the amount due him on the advertising contract. To ascertain the validity of this objection to the recovery in the trial court it is necessary to first determine what were the rights of the plaintiff under the contract of 1890. If by this agreement the defendant was under no obligation to sell to the plaintiff, or was at liberty to put such prices on its goods as it saw fit, it is plain that the agreement for compensation to the plaintiff was entirely illusory and without possible value. Under such a construction it would not secure payment to the plaintiff of a dollar or a dollar's worth. The agreement must be interpreted reasonably, and to give it any effect it must be construed as importing a covenant on the part of the defendant not only to deal with the plaintiff, but to deal with him on exactly the same terms as it offered to other customers. To a certain extent this agreement was in the nature of a due bill payable in goods. In *Vance* v. *Bloomer* (20 Wend. 196) it is said of such an instrument: "The due bill contains an acknowledgment that A (the payee) has paid him in advance for the amount in goods therein expressed; and a promise is implied on the part of the merchant that whenever A shall call at his store and present the due bill he will deliver to him such articles as he shall select out of the goods on hand. The store of the merchant is the place of payment; and no action can be maintained on the due bill until A shall call at the store of the merchant for the goods, and the merchant shall refuse to deliver such goods as A shall select. Indeed, A is to be treated as other customers are to be treated. * * * The merchant is also required to deliver the goods at the market price, and has no right to charge them at a higher price." The plaintiff had performed his part of the advertising contract years before the negotiations for the purchase of the

launches.   The amount specified in the contract was, there-
fore, at the time an existing indebtedness of the defendant,
and a payment to a vendor in his own obligations is a pay-
ment in cash.   (*Foley* v. *Mason*, 6 Md. 37.)   The agreement
also required that the plaintiff should purchase goods to the
amount of at least $5,000, and he was, therefore, obliged to
pay $3,845 in addition to the amount due him for advertising.
This he tendered in money, and in law his turning in the
advertising contract and payment of the remainder in money
would have been a payment of $5,000 in cash.   Had the plain-
tiff actually paid the $5,000 entirely in money, the instant after
he had made the payment he could, under the terms of his con-
tract, have demanded repayment to him of the sum of $1,155,
and in case of refusal have recovered therefor.   It is said that
the minds of the parties did not meet, but what was the subject
as to which they were not in accord ?   It was not as to the price
of the launches, for concededly the defendant was willing to sell
them for $5,000 ; nor as to the terms of payment, for also,
concededly, the payment was to be in cash.   Where the
parties were apart was that the defendant did not expect to be
compelled to fulfill its own obligation.   Was this a material
consideration ?   It is said by the learned court below that the
plaintiff by suppressing his intention to turn in the contract
has been allowed more upon it by the defendant than he
would have been allowed had his full purpose been disclosed.
This may be the fact, but it would not have been the fact if
the defendant had intended to live honestly up to its agree-
ment.   That agreement was to pay $1,155, true not in money,
but in goods ; but still in goods at the same price as that for
which they would have been sold to any other party.

There must be some standard at which the plaintiff might
require goods to be sold to him, or otherwise, as already said,
he was entirely without means of obtaining compensation for
his services.   Appreciating this, it is suggested that the list or
catalogue price of the defendant's launches should be such
standard.   It would be sufficient to say that the written agree
ment does not refer to list price, but to contract price.

Beyond this it appears by Amory's own testimony that in ordinary sales deductions were made from the list prices, and in the catalogue it is stated that special terms will be made for purchases amounting to $5,000 or more. It is urged that the plaintiff has taken an inequitable advantage of the defendant through the latter having forgotten the outstanding contract, but there appears to be on the other hand quite as little equity in the defendant's course of conduct. When the dispute arose about turning in the contract as payment, the defendant first offered to receive it provided the price of the launches was increased to $5,900, which in effect would allow the plaintiff $255 for the $1,155 it owed him, and finally offered to receive it on a sale at $5,500, thus allowing for the contract $655. We do not say that the plaintiff could have held the defendant to a bargain that he had procured by fraud, but no such defense is pleaded. The failure of the plaintiff to call attention in its negotiations with the defendant to the outstanding contract, which probably the defendant's officer had forgotten, may be inconsistent with the highest standard of honor, but it did not constitute fraud in law, because he was under no obligation to state the fact. (*Wood* v. *Amory*, 105 N. Y. 278.) Indeed, it may be said that the defendant seems to have been fully as alert and keen to satisfy its obligation for the smallest possible sum as the plaintiff has been to obtain the most he could for it.

The order of the Appellate Division should be reversed and the judgment entered on the verdict at the trial court affirmed, with costs.

O'BRIEN, J. (dissenting). I think that the verdict was improperly directed and that the order of the court below, reversing the judgment and granting a new trial, is right and should be affirmed.

The question is, whether the plaintiff is entitled as matter of law upon the conceded facts to recover the amount of the contract for advertising in money. That contract was made on the 31st day of October, 1890. It was not to be paid in

money but in property. Whenever the advertiser purchased
from the defendant launches to the amount of $5,000 or more,
then the defendant agreed to deduct from "our contract
price" the sum of $1,155 for the advertising. If the launches
to that amount were not purchased, then the defendant was
not to pay anything. In case the defendant refused to carry
out this agreement in its fair spirit and meaning, it may be
that the advertiser would be entitled to recover the price of
the work in money. (*N. Y. News Publishing Co.* v. *Nat.
Steamship Co.*, 148 N. Y. 40.) Before the plaintiff could
recover in this case he was bound to show that there was a
contract for the purchase of the launches made between the
parties which the defendant refused to perform. The plain-
tiff was not entitled to have the bill for advertising allowed
or deducted from the contract price of launches purchased
unless there was in fact such a contract of purchase made in
the sense that these terms are understood in the law of con-
tracts. The plaintiff was not entitled to have a verdict
directed in his favor unless it appears as matter of law from
the record that such a contract was made, and under the cir-
cumstances disclosed that was a question of fact for the jury
and not a question of law for the court.

This was the ground upon which the learned court below
reversed the judgment entered upon the directed verdict and
granted a new trial. This conclusion, I think, was clearly
correct upon the facts appearing in the record.

It appears that on the 6th day of December, 1897, when
the advertising contract was more than seven years old, the
plaintiff's brother, who it seems was the party who procured the
order for advertising from the defendants, came to the defend-
ant's president to negotiate for the purchase of launches. The
president did not know him and of course did not know that
he had the contract or intended to use it as payment in the
purchase of the launches. He seemed to have been careful
to conceal his identity and his purpose from the president and
for that purpose assumed a false name. The president told
him that the company was hard up and needed money to pay

obligations that were pressing and that he would sell two launches, which were pointed out, for $5,000 *in cash*, which was much less than the regular catalogue price. Hand accepted these terms, and this is the only contract for purchase that has been established.

It is perfectly clear that the defendant agreed to sell at a reduced price for cash and cash only. It is equally clear that the purchaser agreed to pay cash and intended that the defendant should understand that such was his purpose. The jury could have found that the intention of the parties excluded the right to use the old contract for advertising as any part of the purchase price of the launches, since it was expressly stipulated that it was to be a cash sale. Both parties agreed that the seller should receive $5,000 in cash, and not that sum less the old contract for advertising. The seller did not even know that the purchaser had such a contract. But when the purchaser came to pay for the launches, he for the first time revealed to the seller his purpose not to pay in cash but in something else, since he then produced the contract and asked credit for it on the purchase price. The president told him he would allow it, but not on a sale made on a cash basis. He did not repudiate liability to perform the agreement, but insisted that it was intended to apply only on sales at the regular catalogue price, and finally offered to allow the old claim if the purchaser wanted the launches at $5,500. This the purchaser refused and so the proposed contract failed, whereupon the negotiator proceeded to assign the written agreement for the advertising to the plaintiff, who now wants cash for the old claim and must get cash if the verdict was properly directed.

The vital allegation in the plaintiff's complaint is that there was a contract of purchase of the launches, and that the defendant refused to perform i    There can be no recovery by the plaintiff unless that allegation is established as matter of law. This court cannot hold that it was, without giving sanction and complete effect to what may be called a trick or device that would not be entitled to a very eminent place in

the code of commercial honor and morality. If it was not actual fraud it was at least a kind of commercial strategy of such very questionable honesty that there is no imperative duty on the court to aid in carrying it to a successful result. There was no contract and no sale since the minds of the parties never met upon any such transaction as the plaintiff now asserts as the basis of the action. The seller stipulated for cash in an emergency. The buyer agreed to pay cash and, therefore, to exclude the old claim, but intending all the time not to pay in money but to offset an old account. The seller expected money and the buyer agreed to pay money, but really intended to pay something else, and thus one of the parties intended and expected one thing while the other party intended quite another and different thing. A contract or engagement can never in law be evolved from a transaction where the minds of the contracting parties are at such cross purposes. There never can be a sale or contract of sale where the consent of the seller is effected or procured by the promise of the buyer to pay money, concealing his intention all the time to offer payment in something else. The plaintiff in order to recover a judgment for money must show that the defendant committed some breach of the agreement. The agreement was that the defendant would pay for the advertising in a commercial article at a price that would include the customary commercial profit. No one, I think, can fail to perceive what the intention of the parties was in entering into the contract. The advertiser doubtless charged a large profit on his bill, and the defendant intended to do the same when setting a price upon the launches in which the bill was to be paid. That this was the mutual understanding and intention of the parties no one can doubt.

The contract upon its face is so peculiar that it may be called a kind of wager agreement, since it was never to have any effect except upon the contingency of a future sale and purchase of launches. Upon that event depended the obligation to pay for certain services, the real value of which does not appear. If that contingency did not happen the agree-

ment had no value whatever.    After this otherwise worthless contract had lain dormant for over seven years the owner conceived a plan for converting it into cash.    With this end in view he assumed the role of a buyer of launches.    He deceived the defendant's president as to his identity and his real purpose, pretending to be ready and willing to pay cash when he was not.    He played with loaded dice in order to commit the defendant's officer to the lowest cash price and then unmasked his real purpose.    It probably was not so much to buy launches as to create a situation that would enable him, with the aid of the law, to turn the agreement into a money demand.    The president, while refusing to be made the victim of the device, offered to perform the contract upon an honest basis and according to the intention of the parties.    The prompt assignment of the contract to the plaintiff and the commencement of this action reflects some light on the real purpose of the interview.    But, perhaps, the most significant part of the transaction is to be found in the allegation of the plaintiff's complaint that the defendant refused to perform a contract for the purchase and sale of the launches.    There is no other ground stated that will enable the plaintiff to convert this peculiar agreement into money.    Upon that ground he must stand or fall, and until the disputed fact concerning the making and breach of this contract is found in the plaintiff's favor, either by the jury as a question of fact, or by the court as a question of law, the plaintiff cannot recover. The learned court below simply held that the agreement was not established as matter of law, and this conclusion would seem to be reasonable.    If the price of the advertising happened to be $5,000 instead of $1,155, I assume that no reasonable person would say that the defendant's president intended to sell the two launches in order to discharge the old agreement without receiving a dollar in money to pay the defendant's debts, which was the only purpose in view when he gave a cash price to the advertiser.    If, under these circumstances, the court could not direct a verdict, the present case is the same in principle.    When the plaintiff's assignor

agreed to pay a special price in cash he necessarily excluded his right to tender something else in payment, and if there was any engagement at all, or meeting of minds, it was upon that basis and no other. So the question is, could the advertiser refuse to pay as he agreed to and then charge the defendant with a breach of the contract? The result is that there was no contract and no breach of it by the defendant. It is quite certain that the jury could have so found. The defendant did not refuse to perform the contract, but offered to deliver the launches at the catalogue price, which was $500 more than he agreed to sell them on the basis of cash down in order to meet a financial emergency. In the absence of proof that the defendant refused to sell launches in discharge of the contract in the usual and ordinary course of business, and at the customary and established rates, there is no breach of the contract that enables the plaintiff to turn it into a money obligation or demand The plaintiff, himself or his assignor, is the only party who was guilty of a breach of the contract to purchase launches, since he agreed to pay cash, but when the day of delivery arrived refused, and offered payment in an old claim, the existence of which he had carefully concealed from the defendant's president until he had induced him to fix an emergency cash price. This kind of sharp practice cannot be defended on the ground that otherwise the defendant could put any price that it pleased upon the launches. That assertion is not correct, since the fair meaning of the contract is that whenever the advertiser contracts to buy launches at the ordinary or catalogue price to the extent of $5,000, or more, the defendant will then and not until then allow $1,155 on the contract price.

There was a conflict in the evidence as to what actually took place between the parties when they met for the purpose of making the contract for the sale of the launches. I have stated the evidence as it was given by the defendant's president, and as a verdict was directed the defendant was entitled to have the case upon appeal considered in the most favorable light within the limits of any proof in the case. It does not

appear to me that this is a case in which courts should be astute to keep the issues from the jury. There is little danger of any injustice from the action of a jury in such a case. The plaintiff alleged that there was a contract on his part to purchase launches. The defendant denied it, and the proof did not conclusively establish the fact in issue. Hence, the court could not properly direct a verdict, but the case was for the jury, and so the court below held.

The judgment and order should be affirmed, with costs.

GRAY, HAIGHT and LANDON, JJ., concur with CULLEN, J.; PARKER, Ch. J., and WERNER, J., concur with O'BRIEN, J.

Ordered accordingly.